IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SJ ABSTRACT d/b/a** | : | **CIVIL ACTION** |
| **INTERSTATEABSTRACT.COM,** | : | |
| *et al.* | : | **NO. 21-1334** |
| *Plaintiffs* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **OLD REPUBLIC NATIONAL** | : | |
| **TITLE INSURANCE COMPANY** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                          OCTOBER 14, 2021

# MEMORANDUM OPINION

**INTRODUCTION**

In their amended complaint against Defendant Old Republic National Title Insurance Company ("Old Republic" or "Defendant"), Plaintiffs SJ Abstract d/b/a InterstateAbstract.com ("InterstateAbstract") and Ramon Gaber ("Gaber") (collectively, "Plaintiffs") collectively and individually assert claims for breach of contract (asserted by Gaber and by InterstateAbstract at Count I); intentional infliction of emotional distress (asserted by Gaber at Count II); negligent infliction of emotional distress (asserted by Gaber at Count III); violation of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 *et seq.*, (asserted by Gaber at Count IV); and unfair competition (asserted by InterstateAbstract at Count V). [ECF 7].  Before this Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted, [ECF 9], and Plaintiffs' response in opposition thereto, [ECF 10].  For the reasons set forth below, Defendant's motion to dismiss is granted, *in part*, and denied, *in part*.

**BACKGROUND**

When ruling on a motion to dismiss, a court must accept all well-pleaded facts in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The pertinent facts are summarized below:[1]

> Plaintiff InterstateAbstract is a limited liability company providing comprehensive services, including, *inter alia*, title insurance, deed preparation and recording, title searches, property and judgment reports, and survey requests. Plaintiff Gaber is its sole member and the "Resident Title Agent." Defendant Old Republic is a title insurance company whose national network operation includes contracting with real estate professionals, lenders, underwriting titles, and approved agents to secure safe and efficient real estate transactions.
>
> In December 2014, InterstateAbstract entered into a policy-issuing agent contract with Old Republic (the "Agreement"). Under the terms of the Agreement, InterstateAbstract was appointed as a policy-issuing agent for Old Republic. In turn, Old Republic served as InterstateAbstract's underwriter, a role that involved monitoring and auditing InterstateAbstract's business. The Agreement contained, *inter alia*, the following confidentiality clause:
>
>> The parties agree that neither will, without the prior written consent of the other, use, divulge, disclose or make accessible to any other person, firm, partnership or corporation, any Confidential Information, as hereinafter defined, except when required to do so by law, provided, however, that in the case of any such requirement, such party shall provide written notice to the other at least 10 days prior to producing such Confidential Information. For purposes of this agreement, "Confidential Information" shall mean all non-public information concerning the business of the party which has value to the party and is not generally known to competitors, including, by way of illustration and without limitation, information relating to its financial products, product development, customer lists, business and marketing plans and strategies, and operating policies and manuals, except for items which become publicly available information other than through a breach by either party of its duty hereunder.
>
> Subsequently, Plaintiffs became involved in litigation between Realty Mark LLC, a related company of InterstateAbstract, and 3K Realty Group LLC (the "Nexus Litigation"). During the course of that litigation, Dwight Edwards ("Edwards"), an employee of Old Republic, had several communications with 3K

---

[1]    These facts are drawn from Plaintiffs' amended complaint and exhibits attached thereto. [ECF 7].

Realty Group.  These communications led 3K Realty Group to falsely believe that Plaintiffs were stealing escrow funds for personal use.  Edwards also led 3K Realty Group to falsely believe that Plaintiffs had "recording issues" and were "not recording deed and mortgage" in accordance with the law.  This alleged misinformation spread throughout the title and real estate industry, harming Plaintiffs' reputation and standing.

Around July 2019, in connection with the Nexus Litigation, Edwards was served with a subpoena that ordered him to testify and to produce "any and all audits done on behalf of Old Republic Title to SJ Abstract d/b/a Interstate Abstract."  Plaintiffs reminded Edwards multiple times before his deposition of the Agreement's confidentiality clause and his obligations under it.

At the deposition and without Plaintiffs' consent, Edwards turned over Old Republic's entire file on Plaintiffs to 3K Realty Group.  The file included, *inter alia*, financial and bank account information for InterstateAbstract, Gaber's personal credit report, and transaction information pertaining to InterstateAbstract clients.  The disclosures went beyond what was specifically requested by the subpoena.  Neither Edwards nor Old Republic provided InterstateAbstract with prior written notice as required under the Agreement in the event of court-ordered disclosure.

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  In evaluating such a motion, the court may also consider "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *see also* Fed. R. Civ. P. 10(c).  Any "[t]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" may be disregarded.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) (internal citation omitted).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead facts sufficient to state a claim to relief that is "plausible on its face."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Therefore, the complaint must contain sufficient facts to

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). If, after applying this standard, the court finds that the plaintiff could not be entitled to relief, it should dismiss the claim. *Id.* at 210.

**DISCUSSION**

Defendant moves to dismiss all of Plaintiffs' tort and contract claims under Pennsylvania common law[2] and the claim under the FCRA on the basis that Plaintiffs have failed to plead facts sufficient to render them plausible. Defendant further moves to strike Plaintiffs' requests for punitive damages on any surviving claim. Each claim is discussed below in turn.

---

[2] Federal courts sitting in diversity must generally apply the choice-of-law rules of the forum state to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). If, however, the parties agree that a given state's law applies, and that state has an interest in the outcome of the litigation, the court need not, *sua sponte*, engage in a choice-of-law analysis. *See Steaks Unlimited v. Deaner*, 623 F.2d 264, 269–70 (3d Cir. 1980) ("Inasmuch as Pennsylvania has an interest in the outcome of this litigation . . . there is no cause for this Court, sua sponte, to challenge the parties' consensual choice of law."); *Schiavone Constr. Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984) (declining to engage in choice of law analysis when the parties "implicitly agree[d] that New Jersey law govern[ed]").

Here, the Agreement contains a provision indicating that "[t]he validity, construction and enforceability of this Agreement shall be governed by the laws of the state of Minnesota." (Am. Compl. Ex. B, ECF 7-6, ¶ 23). However, by their briefs and arguments, the parties have implicitly agreed that Pennsylvania law applies, having exclusively applied Pennsylvania law in their arguments with respect to Plaintiffs' state law claims. This Court has also considered that Pennsylvania has a clear interest in the outcome of this litigation, as Plaintiffs are both citizens of Pennsylvania and the facts relevant to the disputed communications and conduct occurred in Pennsylvania. Given that neither party mentions the Agreement's choice-of-law provision or cites Minnesota law in its brief, this Court finds the provision has been waived. *See Abate v. Wal-Mart Stores E., L.P.*, 503 F. Supp. 3d 257, 265 n.1 (W.D. Pa. 2020) (concluding that contractual choice-of-law provisions may be waived under Pennsylvania law implicitly by the parties' mutual consent to a different state's law) (citing *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014); *Domino's Pizza LLC v. Deak*, 383 F. App'x 155, 157 n.2 (3d Cir. 2010)).

*Breach of Contract*

In the amended complaint, Plaintiffs each assert a cause of action for breach of the Agreement's confidentiality provision stemming from Defendant's alleged false statements and disclosures. Defendant does not dispute the validity of the Agreement. Rather, in its motion to dismiss, Defendant argues that Gaber is neither a party to the Agreement nor an intended third-party beneficiary and, as such, cannot assert a breach of contract claim against it. This Court agrees. As to InterstateAbstract's claim, Defendant argues that its actions did not constitute a breach. This Court disagrees.

To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages." *Feingold v. State Farm Ins. Co.*, 217 A.3d 409 (Pa. Super. Ct. 2019) (citations omitted). While generally only contracting parties may bring such claims, Pennsylvania law permits intended third-party beneficiaries to do so as well, consistent with the Restatement (Second) of Contracts § 302 (1981). *Caciolo v. Masco Contractor Servs. E., Inc.*, 2004 U.S. Dist. LEXIS 23705, at *5 (E.D. Pa. Nov. 22, 2004); *see also Guy v. Liederbach*, 459 A.2d 744, 751 (Pa. 1983). Under § 302, when a beneficiary is not expressly provided for in a contract, the circumstances must be "so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Scarpitti v. Weborg*, 609 A.2d 147, 150–51 (Pa. 1992) (citing *Guy*, 459 A.2d at 751).

*Gaber's Breach of Contract Claim*

Gaber is SJ Abstract, LLC's sole member. The Agreement specifically provides that it was "made and entered into . . . by and between Old Republic National Title Insurance Company . . . and SJ Abstract, LLC dba Interstate Abstract.com." (Am. Compl. Ex. B, ECF 7-6, at p. 1). Gaber provides no factual allegations for his contention that he is a party to the Agreement by virtue of his status at InterstateAbstract. Furthermore, Pennsylvania law makes clear that even the sole member of a limited liability company ("LLC") is *not* automatically a party to the company's agreements. *See Lin v. Rohm & Haas Co.*, 2015 U.S. Dist. LEXIS 5919, at *16 (E.D. Pa. Jan. 20, 2015) ("[The LCC's sole member] relinquished her right to sue for damages that belong to [the LLC].") (citing 15 Pa. Cons. Stat. § 8991(b)); *cf. Dougherty v. Snyder*, 469 F. App'x 71, 72 (3d Cir. 2012) ("Even single-member LLCs have a legal identity separate from their members."); *David R. Nicholson, Builder, LLC v. Jablonski*, 163 A.3d 1048, 1052 (Pa. Super. Ct. 2017) (concluding that the sole member of an LLC cannot represent the LLC in court *pro se* because they are legally distinct entities). Under these precedents, Gaber is not a party to the Agreement.

Nonetheless, Gaber argues that he is an intended third-party beneficiary of the Agreement and points to the fact that he is the sole member and Resident Title Agent of InterstateAbstract and that he supplies the license necessary to its operation. He further asserts that the Agreement, in particular the confidentiality provision, was intended by both parties to be for his benefit. However, this Court finds neither argument persuasive. Gaber provides no factual allegations to support the legal conclusion that his role in InterstateAbstract makes him a third-party beneficiary other than his bald claim that it makes him a party. In fact, a court in this district recently found in a similar circumstance just the opposite. *See W. Sur. Co. v. Cutler*, 2021 U.S. Dist. LEXIS 122254, at *8–9 (E.D. Pa. June 30, 2021) ("[Plaintiff] does not cite authority – nor can we find

any – in which a court disregarded the corporate form and inferred third-party beneficiary status [solely based on ownership and position in an LLC]."). This Court finds this reasoning applicable here.

As for the confidentiality provision, Gaber contends that it encompassed his personal information, including the personal credit reports required under ¶ 11(B) of the Agreement, and was, therefore, intended by both parties to be for his benefit. In support of this contention, Gaber points to *Frescati Shipping Co. v. Citgo Asphalt Refining Co.*, wherein the United States Court of Appeals for the Third Circuit (the "Third Circuit") found that a boat owner was an intended third-party beneficiary of a warranty contract on his vessel. 718 F.3d 184, 198 (3d Cir. 2013). Gaber argues that, like the warranty in *Frescati*, the confidentiality provision was intended to benefit him by protecting his personal information. Gaber is mistaken. While the warranty at issue in *Frescati* clearly covered the boat, the same is not true of the Agreement and Gaber's personal information. The Agreement defines confidential information as "information concerning *the business of the party*," namely, InterstateAbstract and/or Old Republic. (Am. Compl. Ex. B, ECF 7-6, ¶ 21 (emphasis added)). It also includes the following illustrative list: "information relating to [the party's] financial products, product development, customer lists, business and marketing plans and strategies, and operating policies and manuals . . . ." (*Id.*) Gaber's personal information does not concern the business of InterstateAbstract or that of Old Republic, nor is it similar to the illustrations the Agreement provides. As such, the confidentiality provision does not "so compelling[ly]" evidence an intention by both parties to benefit Gaber. *See Scarpitti*, 609 A.2d at 150. Accordingly, Gaber has not sufficiently alleged facts to plausibly show that he is a third-party beneficiary of the Agreement with the concomitant right to sue for its breach. Defendant's motion to dismiss is granted with respect to Gaber's breach of contract claim.

*InterstateAbstract's Breach of Contract Claim*

InterstateAbstract, a party to the Agreement, also brings a breach of contract claim based on Defendant's alleged disclosures and false statements. Defendant argues that its actions did not constitute a breach. Specifically, Defendant argues that it had a legal duty to turn over the documents in response to a court order, noting that the Agreement prohibited the disclosure of confidential information "except when required to do so by law." (Def.'s Br., ECF 9, at p. 16). In response, InterstateAbstract argues that Defendant's disclosures went "above and beyond the request in the subpoena," (Am. Compl., ECF 7, ¶ 48), which requested only "any and all audits done on behalf of [Defendant] to [InterstateAbstract]." (Am. Compl. Ex. G, ECF 7-11, at p. 3). The Agreement, however, also required Defendant, in the event of a court-ordered disclosure, to provide "written notice to [InterstateAbstract] at least 10 days prior to producing such Confidential Information." (Am. Compl., ECF 7, ¶¶ 53–54). Plaintiff alleged that Defendant did not provide such notice. As such, these allegations are sufficient, at this stage, to plausibly show a breach of the Agreement.

Defendant further argues that InterstateAbstract's claim for breach of contract should be dismissed for "failure to be specific as to what 'confidential information' was disclosed." (Def.'s Br., ECF 9, at p. 16). This Court disagrees. Plaintiffs allege in the amended complaint that Defendant turned over to 3K Realty Group its entire file on InterstateAbstract, which included "bank account information for InterstateAbstract . . . and transaction information for InterstateAbstract clients." (Am. Compl., ECF 7, ¶¶ 48, 52). Plaintiffs further allege that this information is covered by the Agreement's definition of "confidential information" and that its disclosure thus constitutes a breach. (Am. Compl. Ex. B, ECF 7-6, ¶ 21). Plaintiffs' "short and plain statement of the claim and its grounds" is sufficient to survive this motion to dismiss. *Phillips*

*v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008); *see also CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) ("Since appellant pleaded the essential terms of the agreement, a breach and damages, he sufficiently set forth a claim for breach of contract."). As InterstateAbstract has stated facts sufficient to support a claim for breach of contract, Defendant's motion to dismiss the claim as to InterstateAbstract is denied.

### *Intentional Infliction of Emotional Distress*

Gaber also asserts a claim of intentional infliction of emotional distress ("IIED") stemming from Defendant's disclosures and false statements. Defendant moves to dismiss arguing, *inter alia*, that the conduct alleged is not sufficiently outrageous as a matter of law and that Gaber has failed to allege that he suffered physical harm. This Court agrees.

While the Pennsylvania Supreme Court has not formally recognized a cause of action for IIED, the Third Circuit and the Pennsylvania Superior Court have allowed such claims. *See, e.g.*, *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010); *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005). To state a claim for IIED under Pennsylvania law, a plaintiff must allege facts sufficient to plausibly show conduct that "(1) is extreme and outrageous; (2) is intentional or reckless; and, (3) causes severe emotional distress." *Smith v. Sch. Dist.*, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000) (citing *Williams v. Guzzardi*, 875 F.2d 46 (3d Cir. 1989); *Hoy v. Angelone*, 691 A.2d 476 (Pa. Super. Ct. 1997)). Pennsylvania courts have differed as to whether severe emotional harm, absent a physical manifestation, satisfies the requirement. *See Richardson v. Barbour*, 2020 U.S. Dist. LEXIS 149513, at *34 (E.D. Pa. Aug. 19, 2020) ("Pennsylvania courts have recognized causes of action for IIED without a direct physical injury in narrow situations."). However, the Third Circuit has stated that the plaintiff "'must suffer some type of resulting physical harm due to the defendant's outrageous conduct.'" *Reedy*, 615 F.3d at 231 (quoting *Swisher*, 868 A.2d at

1230).  Whether the conduct alleged could reasonably be found to be sufficiently extreme and outrageous is a question of law for the court.  *Smith*, 112 F. Supp. 2d at 427; *Motheral v. Burkhart*, 583 A.2d 1180, 1188 (Pa. Super. Ct. 1990).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987); *see also Reedy*, 615 F.3d at 231–32.

Gaber alleges that Defendant's disclosure of confidential information and misinformation caused him "to suffer severe emotional distress . . . which manifested in, *inter alia*, mental suffering, mental anguish, chagrin, disappointment, and worry."  (Am. Compl., ECF 7, ¶ 73).  He further asserts that Defendant acted with malice and intent to harm him and his business, and that Defendant "knew or should have known" Gaber would suffer emotional distress as a result.  (*Id.* ¶¶ 70–71).  However, Graber has not alleged that he suffered any physical manifestation of his emotional harm.  As such, he cannot maintain a claim for intentional infliction of emotional distress.

Nevertheless, in support of his claim, Gaber relies on cases that are clearly distinguishable.  For example, Gaber cites *Thompson v. United States*, 2017 U.S. Dist. LEXIS 107574 (E.D. Pa. July 12, 2017), and *Miller v. Hoffman*, 1999 U.S. Dist. LEXIS 9275 (E.D. Pa. June 21, 1999), for the proposition that sufficient outrageousness may arise from the defendant's authority over and ability to affect the plaintiff's interests.  Both cases involved deliberate conduct by prison officials that prevented prisoners from obtaining emergent, necessary medical care.  *Thompson*, 2017 U.S. Dist. LEXIS 107574, at *10; *Miller*, 1999 U.S. Dist. LEXIS 9275, at *23.  Whatever power Defendant possessed as an underwriter over Gaber's interests, it is not comparable to that of a prison official over a prisoner; Gaber's reliance on *Thompson* and *Miller* is, thus, inapposite.

Gaber also cites *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979), and *Straub v. CBS Broadcasting, Inc.*, 2016 U.S. Dist. LEXIS 54616 (E.D. Pa. Apr. 25, 2016), where courts found that disseminating falsehoods could constitute IIED. *Chuy* involved a team physician's false announcement to the press that a professional athlete had a fatal disease. 595 F.2d at 1274. *Straub* involved a news broadcast's false accusation that a realtor left dead animals on a property to disrupt its sale. 2016 U.S. Dist. LEXIS 54616, at *4. Although it allowed the IIED claim to go forward, the *Straub* court found it "extremely dubious," noting that the Third Circuit had "rejected the application of intentional infliction of emotional distress in a case in which the defendants 'show[ed] disparaging reports in public' about plaintiff." *Id.* at *29–30 (citing *Clark v. Twp. of Falls*, 890 F.2d 611, 624 (3d Cir. 1989)). Finally, Gaber points to *Lyons v. Springhouse Corp.*, 1993 U.S. Dist. LEXIS 3039, at *1 (E.D. Pa. Mar. 10, 1993), for the proposition that professional harm and humiliation can be sufficient to support a claim of IIED. In *Lyons*, the plaintiff alleged that his employer forced him to transfer offices and discriminated against him based on his age, harming his professional status and reputation. *Id.* at *2–3, 11.

The conduct alleged by Gaber—namely, disclosing private financial information and spreading misinformation that resulted in harm to Gaber's professional reputation in the real estate industry—does not rise to the level of extremity and outrageousness of that in *Chuy*, *Straub*, and *Lyons*.[3] Furthermore, this Court is bound to follow the Third Circuit's determination that some physical harm is required for a claim of IIED under Pennsylvania law. *Reedy*, 615 F.3d at 231–32. As Gaber has not alleged any physical harm as a result of Defendant's disclosures and false statements, and because the conduct alleged does not rise to the requisite level of outrageousness

---

[3]   The *Lyons* court ultimately granted summary judgment, finding the conduct insufficiently outrageous. 1993 U.S. Dist. LEXIS 12357, at *6 (E.D. Pa. Sept. 7, 1993).

11

for a plausible claim of intentional infliction of emotional distress, Defendant's motion to dismiss this claim is granted.

**Negligent Infliction of Emotional Distress**

Gaber also asserts a claim for negligent infliction of emotional distress ("NIED"), again arising out of Defendant's disclosures and false statements. Defendant argues that Gaber's allegations do not satisfy the narrow requirements of NIED claims under Pennsylvania law. This Court agrees.

The Pennsylvania Superior Court has recognized claims for NIED in four distinct circumstances. In addition to severe emotional distress, a plaintiff must allege facts to plausibly show that (1) the defendant "had a contractual or fiduciary duty toward him," (2) the plaintiff "suffered a physical impact," (3) the plaintiff "was in a 'zone of danger' and at risk of an immediate physical injury," or (4) the plaintiff "had a contemporaneous perception of tortious injury to a close relative." *Doe v. Phila. Cmty. Health Alts. Aids Task Force*, 745 A.2d 25, 27 (Pa. Super. Ct. 2000), *aff'd*, 767 A.2d 548 (Pa. 2001). As only the first factual scenario is arguably present here based on the amended complaint, this Court will consider whether Gaber has alleged sufficient facts regarding Defendant's "contractual or fiduciary duty toward him" to constitute NIED.

In *Toney v. Chester County Hospital*, the Pennsylvania Supreme Court split evenly as to whether to allow NIED claims based on contractual or fiduciary duties but absent a physical impact.[4] *See* 36 A.3d 83 (Pa. 2011). The leading opinion in *Toney*, written by the Honorable

---

[4] While *Toney* is not binding precedent, federal and state courts have consistently looked to Justice Baer's opinion as persuasive authority on the scope of this tort under Pennsylvania law. *See, e.g.*, *Snyder v. West Penn Allegheny Health Sys.*, 2014 Pa. Dist. & Cnty. Dec. LEXIS 10808, at *4 (Pa. Ct. Com. Pl. Feb. 19, 2014) ("Subsequent Courts have not hesitated to rely upon and apply both the holding of *Toney* and Justice Baer's language and analysis."); *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014) ("If the Supreme Court were to permit special relationship NIED claims, I predict it would do so by adopting the narrow grounds announced by the lead justices in *Toney*.").

Justice Max Baer, concluded that claims premised on such "special relationships" do not require a physical impact. *Id.* at 85. However, as Justice Baer further explained:

> NIED is not available in garden-variety "breach of contractual or fiduciary duty" cases, but only in those cases where there exists a special relationship where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress.

*Id.* Such a special relationship must entail "an implied duty to care for the plaintiff's emotional well-being" and cause emotional harm "likely to be experienced as a visceral and devastating assault on the self such that it resembles physical agony in its brutality." *Id.* at 95 (alteration and quotations omitted). Guided by *Toney*, Pennsylvania courts have recognized qualifying special relationships only in extremely limited circumstances. *See MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 593 (W.D. Pa. 2019) ("Since *Toney*, Pennsylvania courts have only found certain doctor/patient relationships . . . and one between an adoption agency and adoptive parents to support such a claim, declining to extend liability any further."). In contrast, the case law presents an ever-growing list of relationships which have *not* qualified. *See Hershman*, 17 F. Supp. 3d at 460 n.8 (listing cases in which a qualifying special relationship has not been found); *Kling v. Univ. of Pittsburgh Med. Ctr.*, 2020 U.S. Dist. LEXIS 82498, at *11–12 & n.1 (W.D. Pa. May 8, 2020) (same).

Gaber argues that Defendant had a contractual or fiduciary duty to him given the sensitive information to which it had access as the underwriter of InterstateAbstract. As discussed earlier, this Court has concluded that Defendant does not have a contractual duty to Gaber. Even if Defendant owed a fiduciary duty to Gaber by virtue of their business dealings, it is not one that "obviously and objectively [held] the potential of deep emotional harm in the event of breach," *Toney*, 36 A.3d at 95, and is not analogous to the types of relationships previously recognized in

13

"special relationship" NIED claims. *See Punxsutawney Christian Sch.*, 386 F. Supp. 3d at 593. As such, Gaber has not stated a plausible claim for negligent infliction of emotion distress. Accordingly, Defendant's motion to dismiss this claim is granted.

### Violation of the Fair Credit Reporting Act

Gaber also asserts a claim under the FCRA based on Defendant's disclosure of his personal credit report in connection with the Nexus Litigation. Specifically, Gaber alleges that Defendant violated 15 U.S.C. § 1681b(f),[5] which prohibits the use of a "consumer report" except as authorized. Defendant contends, *inter alia*, that the credit report at issue is not a "consumer report" as defined in the FCRA. This Court agrees with Defendant.

The FCRA defines "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for— (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1). Whether a communication is a "consumer report" turns on both its contents and its purpose. *Arcidiacono v. Am. Express Co.*, 1993 U.S. Dist. LEXIS 4042, at *9 (D.N.J. Mar. 29, 1993). Courts have found the first element, specifying the type of information a consumer report must contain, to be extremely broad. *Trans Union Corp. v. FTC*, 245 F.3d 809, 813 (2001) ("[T]he first element of the FCRA's definition of consumer report 'does not seem very

---

[5] In relevant part, the FCRA provides: "A person shall not use or obtain a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." 15 U.S.C. § 1681b(f).

14

demanding,' for almost any information about consumers arguably bears on their personal characteristics or mode of living.") (citation omitted).  The second element of the definition considers the purpose for which the report was used, expected to be used, or collected.  *Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 2010 U.S. Dist. LEXIS 47123, at *19 (D.N.J. May 12, 2010).  To satisfy this second element, the report "must relate to one of the . . . specifically enumerated transactions [in the statute,] i.e., credit, insurance eligibility, employment, or licensing.  This is to say that a *consumer relationship* must exist between the party requesting the report and the subject of the report."  *Houghton v. N.J. Mfrs. Ins. Co.*, 795 F.2d 1144, 1149 (3d Cir. 1986) (emphasis added).  As such, "the vast majority [of] courts considering the issue have [concluded] that the FCRA . . . do[es] not apply where a consumer report is used for business purposes." *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1081 (C.D. Cal. 2014) (collecting cases).

Gaber contends that his credit report is "easily qualified as a consumer report subject to the FCRA."  (Pls.' Resp. in Opp., ECF 10, at p. 27).  Certainly, a typical credit report would meet the first element of the definition of consumer report, as it bears on the subject's creditworthiness.  Gaber does not, however, plausibly allege that the report was used, expected to be used, or collected *for a consumer purpose*.  On the contrary, as Gaber admits, Defendant "possessed Gaber's consumer report as part of its business file on InterstateAbstract, and used it in furtherance of its professional performance as InterstateAbstract's underwriter."  (*Id.*)  As noted, courts have repeatedly held that reports furnished for business or commercial, not consumer, purposes do not enjoy the protection of the FCRA.  *See, e.g.*, *Grigoryan*, 84 F. Supp. 3d at 1081; *Zeller v. Samia*, 758 F. Supp. 775, 780 (D. Mass. 1991) ("Reports issued for commercial, business or professional purposes are outside the scope of the Act."); *Sizemore v. Bambi Leasing Corp.*, 360 F. Supp. 252,

254 (N.D. Ga. 1973) ("It is manifest that the use of a credit report in connection with . . . business purposes . . . is therefore without the cloak of protection afforded by the Act."); *Wisdom v. Wells Fargo Bank NA*, 2012 U.S. Dist. LEXIS 6597, at *2 (D. Ariz. Jan. 20, 2012) ("[A] report on a consumer for credit . . . in connection with a business operated by the consumer is not a consumer report . . . ."). Gaber has not alleged that the report Defendant possessed and disclosed to the third-party litigant was furnished for a consumer purpose. As such, Gaber has not sufficiently alleged that the report in the instant case is a consumer report as defined by the FCRA. Defendant's motion to dismiss Gaber's FCRA claim is, therefore, granted.

### Unfair Competition

Lastly, Defendant moves to dismiss InterstateAbstract's claim for unfair competition, arguing, *inter alia*, that because it is not InterstateAbstract's competitor, InterstateAbstract cannot state a claim for unfair competition against it. This Court agrees.

The Third Circuit has observed that "the contours of Pennsylvania unfair competition law are not entirely clear." *Checker Cab Phila., Inc. v. Uber Techs., Inc.*, 689 F. App'x 707, 709 (3d Cir. 2017) (citations omitted). As noted by the Pennsylvania Supreme Court, unfair competition "primarily . . . relates to the palming off of one's goods as those of a rival trader," but "its scope has been extended . . . to misappropriation as well as misrepresentation." *Pottstown Daily News Publ'g Co. v. Pottstown Broad. Co.*, 192 A.2d 657, 662 (Pa. 1963) (quoting *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 531 (1935)). "Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of

confidential information." *Synthes (USA) v. Globus Med., Inc.*, 2005 U.S. Dist. LEXIS 19962, at *24 (E.D. Pa. Sept. 14, 2005) (citations omitted).

In the absence of a clearer formulation, some federal and lower state courts in Pennsylvania have looked to the definition of unfair competition found in the Restatement (Third) of Unfair Competition § 1 (1995). *See Giordano v. Claudio*, 714 F. Supp. 2d 508, 521–22 (E.D. Pa. 2010). "Under the Restatement, a defendant is liable for unfair competition if: (1) he engages in deceptive marketing, infringement of trademark or other protectable intellectual property, misappropriation of trade secrets, or acts or practices that are actionable under federal or state statutes; and (2) his conduct causes harm to the plaintiff's commercial relations." *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 679 (E.D. Pa. 2018). Additionally, the Restatement contains a residual clause encompassing "other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public." Restatement (Third) of Unfair Competition § 1(a) (1995). Importantly, to state a claim for unfair competition, "a plaintiff must allege that it is in competition with the defendant—that is, that the plaintiff and the defendant 'supply[] similar goods or services.'" *Giordano*, 714 F. Supp. 2d at 523 (citing *Granite State Ins. Co. v. Aamco Transmissions, Inc.*, 57 F.3d 316, 319 (3d Cir. 1995); *Nevyas v. Morgan*, 309 F. Supp. 2d 673, 679–80 (E.D. Pa. 2004)).

Here, InterstateAbstract argues that Defendant's disclosures and "false narratives" were a willful attempt to destroy InterstateAbstract's business, impair the efficient operation of the market, and misappropriate the benefits of the original Agreement. (Pls.' Resp. in Opp., ECF 10, at p. 33). Nowhere does InterstateAbstract allege, however, that Defendant is a competitor "supplying similar goods and services." *See Granite State*, 57 F.3d at 319. Rather, it characterizes

Defendant as its underwriter and "somewhat of a governing body" "oversee[ing] the title companies [like InterstateAbstract] that write insurance on their paper." (Am. Compl., ECF 7, ¶¶ 22, 23). InterstateAbstract states that Defendant's conduct "was a blatant attempt to destroy InterstateAbstract's business and increase business *to InterstateAbstract's competitors*," (Pls.' Resp. in Opp., ECF 10, at p. 33 (emphasis added)), which it characterizes elsewhere as "other title companies where [Defendant] may have had a continued financial benefit." (*Id.* at p. 5). In short, InterstateAbstract appears to allege unfairness, but not competition.[6] As InterstateAbstract has not alleged that Defendant is its competitor, it fails to state a claim for unfair competition. Thus, Defendant's motion to dismiss InterstateAbstract's unfair competition claim is granted.

### *Punitive Damages*

In several counts of the amended complaint, Plaintiffs include a general request for punitive damages. Defendant moves to strike these requests for punitive damages on the remaining claims. This Court has concluded that *only* InterstateAbstract's claim for breach of contract at Count I survives the motion to dismiss. Notably, at Count I, InterstateAbstract requests only compensatory damages and other relief, including attorney's fees and costs. Therefore, since InterstateAbstract does not request punitive damages on their only surviving claim, this Court need not address Defendant's arguments regarding punitive damages.

---

[6] Another court in this district reached a similar conclusion in *Medical Diagnostic Laboratories, LLC v. Independence Blue Cross*, 2018 U.S. Dist. LEXIS 173676 (E.D. Pa. Oct. 9, 2018). There, summary judgment was granted for the defendant on a medical testing laboratory's unfair competition claim against an insurance company when the two were found not to be competitors. *Id.* at *13. As is the case here, the insurance company in *Medical Diagnostic* was allegedly directing business not to itself, but to other laboratories with which it had a business relationship.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is granted as to Count I, for breach of contract, with respect to Gaber and as to Counts II–V, for intentional infliction of emotional distress, negligent infliction of emotional distress, violation of the Fair Credit Reporting Act, and unfair competition. Defendant's motion to dismiss is denied as to Count I, for breach of contract, with respect to InterstateAbstract. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.