IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SJ ABSTRACT d/b/a** : | | **CIVIL ACTION** |
| **INTERSTATEABSTRACT.COM,** : | | |
| *et al.* : | | **NO. 21-1334** |
| *Plaintiffs* : | | |
| : | | |
| **v.** : | | |
| : | | |
| **OLD REPUBLIC NATIONAL** : | | |
| **TITLE INSURANCE COMPANY** : | | |
| *Defendant* : | | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                                         JUNE 26, 2024

## MEMORANDUM OPINION

**INTRODUCTION**

      Plaintiffs SJ Abstract d/b/a InterstateAbstract.com ("InterstateAbstract" or "Plaintiff") and Ramon Gaber ("Gaber") filed an amended complaint in this matter against Defendant Old Republic National Title Insurance Company ("Old Republic" or "Defendant") asserting, *inter alia*, a claim for breach of contract that existed between Plaintiff InterstateAbstarct and Defendant (the "Agreement"). (ECF 7). By Order dated October 14, 2021, Defendant's motion to dismiss was granted resulting in the dismissal of Gaber's claims and all of InterstateAbstract's claims except the claim premised on an alleged breach of the Confidentiality Clause of the Agreement; *to wit*: stemming from the production of documents at a deposition and from a voicemail. (*See* ECF 11, 12).

      Presently, before this Court is Defendant's motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, on the remaining breach of contract claim. (ECF

27).  Plaintiff opposes the motion.  (ECF 28).[1]  For the reasons set forth, Defendant's motion for summary judgment is granted, *in part*, and denied, *in part*.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and the supported relevant facts in the light most favorable to the non-movant — here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  The facts relevant to the underlying motion for summary judgment are:[2]

> Plaintiff is a Pennsylvania limited liability company providing comprehensive services, including, *inter alia*, title insurance, deed preparation and recording, title searches, property and judgment reports, and survey requests. Defendant is a Florida title insurance company whose national network operation includes contracting with real estate professionals, lenders, and approved agents to secure safe and efficient real estate transactions.
>
> In December 2014, Plaintiff entered into a policy-issuing agent contract with Defendant (the "Agreement").  Under the terms of the Agreement, Plaintiff was appointed as a policy-issuing agent for Defendant.  In turn, Defendant served as Plaintiff's underwriter, a role that involved monitoring and auditing Plaintiff's business.  The Agreement contained, *inter alia*, the following confidentiality clause, (the "Confidentiality Clause"):
>
>> The parties agree that neither will, without the prior written consent of the other, use, divulge, disclose or make accessible to any other person, firm, partnership or corporation, any Confidential Information, as hereinafter defined, except when required to do so by law, provided, however, that in the case of any such requirement, such party shall provide written notice to the other at least 10 days prior to producing such Confidential Information.  For purposes of this agreement, "Confidential Information" shall mean all non-public information concerning the business of the party which has value to the party and is not generally known to competitors, including, by way of illustration and without limitation, information relating to its financial products, product development, customer lists, business and marketing plans and strategies, and operating

---

[1] This court has also considered Defendant's reply.  (ECF 29).

[2] These facts are taken from the parties' briefs, exhibits, and statements of facts.  To the extent that any fact is disputed, such dispute will be noted and, if material, will be construed in Plaintiff's favor.

>policies and manuals, except for items which become publicly available information other than through a breach by either party of its duty hereunder.

The Agreement does not mention any date for terminating or ending the Agreement.

At some later unknown date, Plaintiff became a party to litigation when one of its related companies, Realty Mark LLC, initiated a lawsuit against 3K Realty Group LLC (the "Nexus Litigation"). During the course of the Nexus Litigation, Dwight Edwards ("Edwards"), one of Defendant Old Republic's employees, left a voicemail for Kenneth Bello, Jr., one of the owners of 3K Realty Group LLC., stating that Plaintiff was having "recording issues."

On July 10, 2019, in connection with the Nexus Litigation, Edwards was served with a subpoena that ordered him to testify and produce "any and all audits done on behalf of Old Republic Title to SJ Abstract d/b/a Interstate Abstract." The deposition was scheduled for July 15, 2019. Edwards did not notify Plaintiff of the subpoena, but a copy of the subpoena was served on Plaintiff's counsel. By letter dated July 12, 2019, Plaintiff's attorney Anthony Gallia ("Attorney Gallia"), writing on behalf of Plaintiff and Realty Mark LLC, notified Edwards that Plaintiff was aware he was subpoenaed and reminded him of the Confidentiality Clause of the Agreement.

Edwards appeared for his deposition on July 15, 2019, and brought Plaintiff's files with him, as directed by the subpoena. Attorney Gallia was present at Edwards' deposition on behalf of Plaintiff and Realty Mark LLC. When Edwards was asked to hand over the documents, Attorney Gallia made no objections. Edwards turned over the documents and they were copied. The disclosed documents included confidential details such as Social Security numbers, tax ID numbers, policy premium arrangements, and personal credit reports, including those of Gaber. Both 3K Realty's attorney and Attorney Gallia used the produced documents while deposing Edwards.

On August 1, 2019, William Schlitte, an auditor for Defendant Old Republic, was deposed in the Nexus Litigation. Attorney Gallia was present at this deposition as well, representing Plaintiff and Realty Mark LLC. Documents from Plaintiff's files that Edwards disclosed at his deposition were used to depose William Schlitte. Again, Attorney Gallia did not object.

At no point during or after Edwards' deposition did Plaintiff notify Edwards that he had breached the Confidentiality Clause of the Agreement. On August 4, 2020, more than a year after Edwards' deposition, Plaintiff filed this action asserting a breach of contract claim based on Edwards' unauthorized disclosures.

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice.  Fed. R. Civ. P. 56.  Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party.  *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Id.* at 322.  After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co.*

of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324.  Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.*

**DISCUSSION**

As mentioned, Plaintiff's breach of contract claim[3] is based on two alleged breaches of the Confidentiality Clause of the Agreement:  (1) the production of Plaintiff's confidential documents at Edward's deposition and (2) the voicemail Edwards left Kenneth Bello, Jr. regarding "recording issues." [4]  Defendant moves for summary judgment arguing, *inter alia*, that there was no breach because Plaintiff effectively waived its rights under the Confidentiality Clause of the Agreement.

---

[3]     Plaintiff's contract claim is governed by Pennsylvania law.  Here, the Agreement contains a provision indicating that "[t]he validity, construction and enforceability of this Agreement shall be governed by the laws of the state of Minnesota."  (Am. Compl. ECF 27-3, Ex. B at ¶ 23).  However, as this Court has noted in a prior Opinion, the parties have implicitly agreed that Pennsylvania law applies, having almost exclusively applied Pennsylvania law in their briefs and arguments.  (*See* ECF 11, at p. 4).  Given that neither party mentions the Agreement's choice-of-law provision or cites Minnesota law in their briefs, this Court finds the provision has been waived.  *See Abate v. Wal-Mart Stores E., L.P.*, 503 F. Supp. 3d 257, 265 n.1 (W.D. Pa. 2020) (concluding that contractual choice-of-law provisions may be waived under Pennsylvania law implicitly by the parties' mutual consent to a different state's law) (citing *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014); *Domino's Pizza LLC v. Deak*, 383 F. App'x 155, 157 n.2 (3d Cir. 2010)).  Further, the parties do not note, and this Court is not aware of any conflict between Minnesota and Pennsylvania law, as it pertains to the law applied here.  Therefore, this Court will continue to apply Pennsylvania law.  *See State Farm Fire & Cas. Co. v. Holmes Prod.*, 165 F. App'x 182, 185 n.1 (3d Cir. 2006) (holding that where "there is no conflict between the laws of other states that may have an interest in the [] action and [the forum state] . . . a court shall apply the law of the forum state").

[4]     As described above, Defendant's alleged breaches of the Agreement are a result of its employee's (Edwards) actions.  "[U]nder the doctrine of vicarious liability, the corporation, not the employee, is liable for acts committed by the employee in the course of employment."  *Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1196 (Pa. 2012).  Notably, the parties do not dispute that Edwards was acting in the scope of his employment or that Defendant — Edwards' employer — is the properly named party in this case.

*Deposition Disclosure*

Plaintiff argues that Defendant breached the Confidentiality Clause of the Agreement by not providing Plaintiff with ten days' notice before Edwards appeared for his deposition and by disclosing confidential material beyond that which fell within the scope of the subpoena. In response, Defendant argues, *inter alia*, that Plaintiff had the same notice as Defendant and — by Attorney Gallia's conduct — waived its rights under the Confidentiality Clause and, therefore, Defendant did not breach the Agreement.

Specifically, Plaintiff contends that Defendant failed to provide Plaintiff with sufficient notice of Edwards deposition and of the disclosures requested in the subpoena. The Confidentiality Clause provides that a party who is required by law to disclose confidential information, *i.e.*, pursuant to a court ordered subpoena, "shall provide written notice to the other at least 10 days prior to producing such Confidential Information." (Agreement, ECF 27-3, at ¶ 21). Here, Edwards was served with a subpoena on July 10, 2019, requiring him to appear for a deposition and produce documents five days later, on July 15, 2019. Defendant argues that due to the timing of the subpoena and deposition, it was unable to comply with the ten-day notice requirement. Nonetheless, Defendant argues that Plaintiff had *actual* notice because a copy of the subpoena was served on Plaintiff's counsel.[5] (Smith Dep., ECF 27-5, at 82:11-83:22). It is apparent that Plaintiff had knowledge of the subpoena because on July 12, 2019, Plaintiff's counsel sent Edwards a letter indicating they knew he had been served with a subpoena and reminding him of the Confidentiality

---

[5] This Court notes that the Pennsylvania Rules of Civil Procedure — the rules governing the Nexus Litigation — require that "[a] party seeking production from a person not a party to the action shall give written notice to every other party of the intent to serve a subpoena at least twenty days before the date of service. A copy of the subpoena proposed to be served shall be attached to the notice." Pa. R. Civ. P. 4009.21(a). Here, Plaintiff was a party to the Nexus Litigation and Edwards was not, thus, under the applicable rules, Plaintiff had at least twenty more days of notice than Edwards and Defendant.

Clause of the Agreement. Further, strict compliance with a notice provision is not necessary when a party has actual notice and is not prejudiced by the other party's failure to provide notice. *See Borough of Lansdale, Pennsylvania v. PP & L, Inc.*, 2006 WL 859431, at *6 (E.D. Pa. Mar. 31, 2006) ("The essential purpose of a notice provision can be given effect so long as the party to be protected by the provision received actual notice and was given an opportunity to cure." (internal quotation marks omitted)); *First Gen. Const. Corp. v. Kasco Const. Co.*, 2011 WL 2038542, at *7 (E.D. Pa. May 24, 2011) ("[A] notice provision may be modified by actual notice only if the defendant suffered no prejudice by the plaintiff's failure to [provide notice]."). As mentioned, Plaintiff had actual notice of the Edwards deposition and the request for production of the audit files, and was not prejudiced by Defendant's failure to provide notice, as Plaintiff attended the deposition and had ample opportunity to object, *see infra* discussion at pp. 9-10.

Plaintiff further maintains that Edwards produced confidential documents (the agency file), documents beyond that which was required by the subpoena. The Confidentiality Clause of the Agreement specifically provides that a party may not disclose confidential information "except when required to do so by law." (Agreement, ECF 27-3, at ¶ 21). Here, Edwards was served with a subpoena that required him to attend a deposition and "provide any and all audits done on behalf of Old Republic Title to SJ Abstract LLC /d/b/a Interstate Abstract." (ECF 28-6, at p. 3). A subpoena has the force of law and, thus, Edwards was required by law to appear for the deposition and produce the requested documents. *See* Pa. R. Civ. P. 234.5 (explaining that failure to comply with a subpoena can result in sanctions and a witness being held in contempt). Nevertheless, Plaintiff argues that Edwards disclosed documents beyond the scope of what was required by the subpoena when producing the entire agency file pertaining to Plaintiff, when the subpoena asked

only for the audits.  Defendant disputes this contention and maintains that Edwards only produced the subpoena-requested audit files.

In support of its contention that Edwards only produced the subpoena-requested audit file at his deposition, Defendant notes that in response to Plaintiff's requests for production of documents in this case, Defendant attached the audit files as Exhibit 1 and the agency files as Exhibit 2.  In its response to one of Defendant's requests for admission, Plaintiff admitted that "[t]rue and correct copies of the documents produced by Edwards at the Edwards deposition are attached as Exhibit 1 to Old Republic's Responses to SJ Abstract's First Request for Production of Documents . . . ."  (ECF 29-2, at ¶ 6).  Defendant argues that coupling these two discovery responses unequivocally proves that Defendant only disclosed the audit files which were requested by the subpoena.  Defendant, however, does not attach any evidence to support its contentions about its response to requests for production of documents.  As such, Defendant's contentions are not dispositive of this claim at this stage of the litigation.

Regardless of what files Edwards produced or whether Defendant complied with the ten-day notice requirement, Defendant argues that Plaintiff cannot assert a breach of contract claim for disclosures of confidential information at Edwards' deposition because Plaintiff's contemporaneous and subsequent actions resulted in a waiver of any confidentiality rights provided by the Confidentiality Provision.[6]  This Court agrees.

"Under Pennsylvania law, a waiver 'is the act of *intentionally* relinquishing or abandoning some known right, claim or privilege.'"  *Archway Ins. Servs. v. James River Ins. Co.*, 507 F. App'x

---

[6]  Defendant argues that Plaintiff waived its rights under the Confidentiality Clause of Agreement when its lawyer, Attorney Gallia, failed to take certain actions during and after the Edwards deposition. "[T]he imputation doctrine recognizes that principals generally are responsible for the acts of agents committed within the scope of their authority." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 494 (3d Cir. 2013).  Neither party disputes that Attorney Gallia was acting in the scope of his authority or that his actions are imputed to Plaintiff.

270, 272 (3d Cir. 2012) (quoting *Brown v. Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962)). "'[W]aiver is essentially a matter of intention.'" *Connelly Constr. Corp. v. Travelers Cas. & Sur. Co. of Am.*, 788 F. App'x 122, 125 (3d Cir. 2019) (quoting *Brown*, 186 A.2d at 401). Therefore, waiver "may be expressed or implied." *Brown*, 186 A.2d at 401. "[W]aiver of legal rights can arise by clear, unequivocal, and decisive action by a party with knowledge of such rights and evident purpose to surrender them." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 148 (3d Cir. 1999). "The court may infer that a party has waived a contractual right from undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Mack Trucks, Inc. v. BorgWarner Turbo Sys., Inc.*, 2011 WL 1045108, at *5 (E.D. Pa. Mar. 22, 2011), *aff'd*, 508 F. App'x 180 (3d Cir. 2012) (internal quotation marks and citation omitted). However, implied waiver "applies only to situations involving circumstances equivalent to an estoppel." *Brown*, 186 A.2d at 401. Thus, "[t]he party claiming implied waiver must show that it was misled and prejudiced by the other party's conduct." *Paramount Aviation Corp.*, 178 F.3d at 148.

Here, the undisputed record evidence shows that Plaintiff failed to object to the disclosure of the alleged confidential information at issue on multiple occasions, despite having the ability to object. After receiving notice of the deposition and request for production of documents, Plaintiff sent a letter to Edwards reminding him of the Confidentiality Clause but did not move for a protective order. (Smith Dep., ECF 27-5, at 84:10-17). Plaintiff's counsel, Attorney Gallia, attended the Edwards deposition and did not object before the deposition began. (Edwards 6/23/23 Dep., ECF 27-6, at 130:17-18). When Edwards was asked to turn over the files, Attorney Gallia stated, "I have no objection to that." (Edwards 7/15/19 Dep., ECF 27-11, at 24:9-12). In fact, Edwards testified that before turning over the files, he looked at Attorney Gallia to see if he was

going to object, but he did not. (Edwards 6/23/23 Dep., ECF 27-6, at 131:24-132:3). 3K Realty's attorney then advised that he would make a copy of the file, one for him and one for Attorney Gallia. (Edwards 7/15/19 Dep., ECF 27-11, 24:14-16). In response, Attorney Gallia stated: "Yeah, that would be great." (*Id.* at 24:17-18). Attorney Gallia's "clear, unequivocal, and decisive" statement that he had no objection to Edwards' production of the documents — at times when there were clear opportunities to speak out — was conduct that is "so inconsistent" with the enforcement of the Confidentiality Clause of the Agreement, that it leaves "no opportunity for a reasonable inference" that the confidentiality provision was not being waived. *Paramount Aviation Corp.*, 178 F.3d at 148; *see also Mack Trucks*, 2011 WL 1045108, at *5.

Notwithstanding, Plaintiff argues it did not know that the documents Edwards was producing contained confidential information and, therefore, Attorney Gallia's failure to object was not a waiver of the Confidentiality Clause. Attorney Gallia's subsequent actions, however, undermine this argument. After stating "no objection" to Edwards' production of the documents to 3K Realty's attorney and agreeing to the files being copied, Attorney Gallia used the files to cross-examine Edwards. (Edwards 6/23/23 Dep., ECF 27-6, at 133:8-11). At no time during the deposition, even after using the documents Edwards disclosed, did Attorney Gallia indicate that Edwards had violated the Confidentiality Clause of the Agreement. (*Id.* at 136:4-11).[7] At no point

---

[7] Documents produced by Edwards were used again, two weeks later, at the deposition of William Schlitte. (Smith Dep., ECF 27-5, at 91:22-92:3). Attorney Gallia was present at the Schlitte deposition, and once again did not object to the use of the documents produced by Edwards and, in fact, questioned Schlitte about the findings of the audits. (*Id.* at 92:4-7); (Schlitte Dep., ECF 27-12, 62:3-63:15, 68:6-69:17). However, Plaintiff argues the documents used at the Schlitte deposition were a few select documents produced by Edwards that were non-confidential. (*See* Pl.'s Resp. Br., ECF 28, at p. 17). Construing the facts in Plaintiff's favor, as the Court must do at this stage of the litigation, even if only a select, non-confidential portion of the documents produced at Edwards' deposition were used and relied on for questioning at Schlitte's deposition, this demonstrates that, by the time of Schlitte's deposition on August 1, 2019, Plaintiff had access to and had reviewed the files disclosed by Edwards. At that point, Plaintiff also had the opportunity to object, take action to regain control the confidential documents, or destroy them.

following the deposition was Edwards advised that he violated the Confidentiality Clause. (*Id.* at 135:25-136:3). Further, Plaintiff's Corporate representative, Brian Smith, admitted he was not aware of any subsequent actions taken by Plaintiff or communications by Attorney Gallia with regard to the disclosed documents after the initial letter sent to Edwards. (Smith Dep., ECF 27-5, at 94:2-16).

Plaintiff also argues it did not waive its rights under the Confidentiality Clause of the Agreement because it asserted those rights by initiating the instant action in state court on August 4, 2020.[8] This argument is unpersuasive in light of Plaintiff's repeated failure to object to the disclosure and the absence of any notification or action immediately following the Edwards deposition. The filing of a civil action more than a year after the confidential information was disclosed is not sufficient action on behalf of Plaintiff to support its assertion that it did not waive its rights under the Confidentiality Clause. Plaintiff's conduct at the Edwards deposition, *i.e.*, not objecting to the disclosure, agreeing to allow the documents to be copied, using the disclosed documents during cross-examination, and never notifying Edwards of his breach, misled Edwards to believe he was not breaching the Confidentiality Clause of the Agreement since the disclosure was made in response to a subpoena. *See Camp Ne'er Too Late, LP v. Swepi, LP*, 185 F. Supp. 3d 517, 550 (M.D. Pa. 2016) (quoting *Atl. Refin. Co. v. Wyo. Nat'l Bank of Wilkes-Barre*, 51 A.2d 719, 725 (Pa. 1947) ("Waiver will not be presumed or implied . . . unless by [the Plaintiff's] conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to."). Notably, Edwards testified that he expected Attorney Gallia to object if he had been violating the Confidentiality Clause. (Edwards Dep., ECF 27-6, at 133:3-7). Prior to the filing of this lawsuit, which alleges damages upward of $400,000, Plaintiff never made

---

[8] Plaintiffs initiated this lawsuit in Pennsylvania state court by writ of summons only on August 4, 2020, and filed a complaint on March 4, 2021.

any mention to Edwards that he had violated the Confidentiality Clause of the Agreement or made any efforts to regain control of the disclosed documents. Because of Plaintiff's failure to do anything at the time, Defendant was unable to mitigate any damages that may have resulted from the use of the disclosed confidential documents. Now that Plaintiff has sued Defendant for breach of the Confidentiality Clause of the Agreement, Defendant is prejudiced by Plaintiff's year of inaction following Edwards' deposition. *See Paramount Aviation Corp.*, 178 F.3d at 148.

Under these circumstances, there is no genuine issue of material fact as to Plaintiff's implied waiver of its rights under the Confidentiality Clause of the Agreement with respect to the documents disclosed by Edwards at his deposition on July 15, 2019. As such, Defendant has met its summary judgment burden as to Plaintiff's breach of contract claim premised on disclosures at the Edwards deposition.

### *Voicemail Disclosure*

Plaintiff also argues that Defendant breached the Confidentiality Clause of the Agreement when Edwards left Kenneth Bello, Jr. a voicemail containing confidential information. Defendant disagrees and argues that the content of the voicemail was public information and, thus, its disclosure did not violate the Confidentiality Clause.

As mentioned, after the Agreement between Plaintiff and Defendant was terminated, Edwards left a voicemail for Kenneth Bello, Jr., one of the defendants in the Nexus Litigation, saying:

> Hi, Ken, this is Dwight Edwards, Old Republic Title. I was returning your call from last week. I apologize for the delay in getting back to you. I am aware of some recording issues with Interstate Abstract. We are no longer an underwriter for them, so I certainly am interested in knowing whatever problems you had in the past that may be on file for their archives. I thought we had everything at least recorded and then had done bring downs. . . .

(Pl.'s Resp. Br., ECF 28-2, at p. 6).

Defendant argues that the information disclosed in the voicemail is not confidential because recording information is of public record. Citing to the deposition of Brian Smith, Plaintiff's corporate designee, Defendant argues that recording information is public record in Pennsylvania and New Jersey and, therefore, is not confidential. (Smith Dep., ECF 27-5, at 65:3-66:6). Plaintiff, however, argues that Edwards disclosure that Plaintiff was having "recording issues," was not a matter of public record.

The Confidentiality Clause of the Agreement defines confidential information as:

> all non-public information concerning the business of the party which has value to the party and is not generally known to competitors, including, by way of illustration and without limitation, information relating to its financial products, product development, customer lists, business and marketing plans and strategies, and operating policies and manuals . . . .

(Agreement, ECF 27-3, at ¶ 21). Given the fact that Plaintiff issues title insurance and prepares and records deeds, whether it is having "recording issues," could be "non-public information concerning the business of [Plaintiff] which has value to [Plaintiff] and is not generally known to competitors." (*Id.*). A genuine issue of material fact exists as to whether Edwards' disclosure that Plaintiff was having "recording issues" was confidential information. As such, Defendant's motion for summary judgment is denied as to this claim.

**CONCLUSION**

For the foregoing reasons, this Court finds that: (1) Defendant is entitled to summary judgment on Plaintiff's breach of contract claim premised on the deposition disclosures because there are no genuine issues of material fact as to Plaintiff's waiver of the confidentiality provision with respect to the deposition disclosure; and (2) Defendant failed to meet its burden with respect to Plaintiff's breach of contract claim premised on the voicemail disclosure because genuine issue

13

of material fact exist as to whether the information disclosed was confidential.  Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's deposition disclosure claim and denied as to the voicemail disclosure claim.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.